FILED

MAY - 9 2007

[Clerk signature]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA

| | | |
|---|---|---|
| THOMAS L. BARTAK, and<br>CINDY S. KUHL, Husband and Wife, | ) )  ) | Case No. 07-4068 |
| Plaintiffs, | ) ) | |
| vs. | ) ) ) | COMPLAINT<br>AND DEMAND FOR<br>JURY TRIAL |
| JAMES C. FITZGERALD, D.C.,<br>DAKOTA CHIROPRACTIC CLINICS, P.C.,<br>d/b/a FIRST CHIROPRACTIC CENTER,<br>DAVID J. BARNES, M.D.,<br>YANKTON MEDICAL CLINIC, P.C.,<br>MICHAEL SCHURRER, M.D.,<br>ANTHONY JAVUREK, M.D.,<br>AVERA SACRED HEART HOSPITAL,<br>MARK H. BECHTEL, M.D.,<br>YANKTON RADIOLOGY, LLP,<br>JOHN DOE(S), JOHN DOE(S) M.D.,<br>JANE DOE(S), M.D., and JOHN DOE(S), P.C., | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

COME NOW the Plaintiffs, Thomas L. Bartak ("Bartak") and Cindy S. Kuhl ("Kuhl"), through their attorneys of record, and for their causes of action against the Defendants, state and allege as follows:

FIRST CAUSE OF ACTION

Plaintiffs allege:

1. At all times relevant herein, Plaintiffs Bartak and Kuhl were married and citizens of the State of Nebraska. At all relevant times herein, all named Defendants were either citizens of South Dakota or corporations incorporated under the laws of the State of South Dakota with their principal place of business in a state other than the State of Nebraska. The matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. § 1332.

2. Defendant Avera Sacred Heart Hospital, hereinafter called "Hospital," is a corporation, organized under the laws of the State of South Dakota. At all relevant times herein,

the Hospital leased, operated, and maintained a public hospital in Yankton, South Dakota, holding itself out to the public as a public hospital furnishing medical treatment, care and attention to patients, for a fee, while assuming a duty of exercising reasonable care towards its patients in the rendering of its services. That at all times hereinafter mentioned, the Hospital was acting by and through its employees, authorized agents, apparent agents, and/or representatives, who were acting within the scope and course of their employment and/or apparent agency with the Hospital.

3. At all relevant times herein, Defendant Yankton Medical Clinic, P.C., hereinafter called "Yankton Clinic," was a professional corporation, incorporated under and pursuant to the laws of the State of South Dakota, maintaining its principal business in Yankton, South Dakota, holding itself out to the public as a medical service corporation furnishing medical treatment, care and attention to patients, for a fee, while assuming a duty of exercising reasonable care toward its patients in the rendering of its services. That at all times hereinafter mentioned, Yankton Clinic was acting by and through its employees, authorized agents, apparent agents, and/or representatives, who were acting within the scope and course of their employment with the Yankton Clinic.

4. At all relevant times herein, Defendant David J. Barnes, M.D., hereinafter called "Barnes," was duly licensed and authorized to practice medicine in the State of South Dakota and furnished medical diagnosis, treatment, care and attention to patients, for a fee, while assuming a duty of reasonable care toward his patients in the rendering of his medical services. That at all relevant times herein, Barnes was an employee of the Yankton Clinic and was acting within the course and scope of his employment with the Yankton Clinic. That at all times hereinafter mentioned, Barnes was an agent, actual and/or apparent, of the Hospital and was acting within the scope and course of said agency relationship with the Hospital.

5. At all relevant times herein, Defendant Michael Schurrer, M.D., hereinafter called "Schurrer," and Defendant Anthony Javurek, M.D., hereinafter called "Javurek," were duly licensed and authorized to practice medicine in the State of South Dakota and furnished medical diagnosis, treatment, care and attention to patients, for a fee, while assuming a duty of reasonable care toward their patients in the rendering of their medical services. That at all times hereinafter mentioned, Defendants Schurrer and Javurek were employees, authorized agents, apparent

2

agents and/or representatives of the Hospital and were acting within the scope and course of their employment, agency and/or apparent agency with the Hospital.

6. At all relevant times herein, Defendant Yankton Radiology, LLP, n/k/a Yankton Radiology Prof, LLC, hereinafter called "Yankton Radiology," was a limited liability company, organized under and pursuant to the laws of the State of South Dakota, maintaining its principal business in Yankton, South Dakota, holding itself out to the public as a medical service corporation furnishing medical treatment, care and attention to patients, for a fee, while assuming a duty of exercising reasonable care toward its patients in the rendering of its services. That at all times hereinafter mentioned, Yankton Radiology was acting by and through its employees, authorized agents, apparent agents, and/or representatives, who were acting within the scope and course of their employment with Yankton Radiology.

7. At all relevant times herein, Defendant Mark H. Bechtel, M.D., hereinafter called "Bechtel," was duly licensed and authorized to practice medicine in the State of South Dakota and furnished medical diagnosis, treatment, care and attention to patients, for a fee, while assuming a duty of reasonable care toward his patients in the rendering of his medical services. That at all relevant times herein, Bechtel was an employee as a radiologist of the Yankton Radiology and was acting within the course and scope of his employment with Yankton Radiology. That at all times hereinafter mentioned, Bechtel was an agent, actual and/or apparent, of the Hospital and was acting within the scope and course of said agency relationship with the Hospital.

8. At all relevant times herein, Defendant John Doe(s), P.C., real name(s) unknown, hereinafter called "Doe(s) P.C.," was a professional corporation, incorporated under and pursuant to the laws of the State of South Dakota, maintaining its principal business in Yankton, Yankton County, South Dakota, holding itself out to the public as a medical service corporation furnishing medical treatment, care and attention to patients for a fee, while assuming a duty of exercising reasonable care towards its patients in the rendering of its services. That at all times hereinafter mentioned, Doe(s) P.C. was acting by and through its employees, authorized agents, apparent agents, and/or representatives, who were acting within the scope and course of their employment with Doe(s) P.C.

9. At all relevant times herein, Defendants John Doe(s), M.D., and Jane Doe(s), M.D., real names unknown, were physicians duly licensed and authorized to practice medicine in

the State of South Dakota, holding themselves out to the public as physicians who furnished medical diagnosis, treatment, care and attention to patients for a fee, while assuming a duty of reasonable care towards his or her patients in the rendition of his or her medical services.

10.  At all relevant times herein, Defendant Dakota Chiropractic Clinics, P.C., hereinafter called "Dakota Chiropractic," was a professional corporation, incorporated under and pursuant to the laws of the State of South Dakota, maintaining its principal business in Yankton, South Dakota, holding itself out to the public as a chiropractic service corporation furnishing chiropractic treatment, care and attention to patients, for a fee, while assuming a duty of exercising reasonable care toward its patients in the rendering of its services. That at all times hereinafter mentioned, Dakota Chiropractic was acting by and through its employees, authorized agents, apparent agents, and/or representatives, who were acting within the scope and course of their employment with Dakota Chiropractic.

11.  At all relevant times herein, Defendant James C. Fitzgerald, D.C., hereinafter called "Fitzgerald," was duly licensed and authorized to practice chiropractic care in the State of South Dakota, and furnished chiropractic diagnosis, treatment, care and attention to patients for a fee, while assuming a duty of reasonable care toward his patients in the rendering of his chiropractic services. At all times hereinafter mentioned, Fitzgerald was an employee, agent and/or apparent agent of Dakota Chiropractic, and was acting within the scope and course of his employment with Dakota Chiropractic.

12.  On May 20, 2005, May 25, 2005, May 27, 2005, May 31, 2005, and June 1, 2005, Plaintiff was treated by Defendant Fitzgerald at Defendant Dakota Chiropractic's facility for back pain. During the course of this treatment, Defendant Fitzgerald injured a disc in Plaintiff's thoracic spine at T11-12, which caused spinal cord compression. On June 1, 2005, Defendant Fitzgerald contacted Stanford G. Seibel, M.D., an orthopedic specialist, who agreed to prescribe a prescription medication for a Medrol DosePak without seeing or examining Plaintiff.

13.  On June 2, 2005, Plaintiff presented to the emergency room at Defendant Hospital with complaints of severe back pain, numbness and weakness in his lower extremities, and pain in his groin and pelvic area. Plaintiff was initially evaluated and treated in the emergency room by Defendant Schurrer who diagnosed him with uncontrollable back pain, dehydration, abdominal discomfort, and leukocytosis. Defendant Barnes admitted Plaintiff to the Hospital. After being admitted to the Hospital, Plaintiff complained of severe and ongoing back pain,

4

weakness, loss of feeling in both lower extremities, difficulty emptying his bladder, difficulty moving his bowels, and radiating pain in both lower extremities. In the very early morning hours of June 3, 2005, Plaintiff complained to the nursing staff that he felt like his legs were paralyzed and he could not move his lower extremities. At approximately 2:30 a.m. on June 3, 2005, Defendant Barnes was called at home and told of Plaintiff's condition. Defendant Barnes asked that the patient be brought to the emergency room for further evaluation. That further evaluation was provided by Defendant Javurek who noted that Plaintiff had definite weakness in the lower extremities but that he did not believe that there was true paralysis; his diagnosis was acute disc disease, excessive anxiety, and excessive analgesics. Defendant Javurek discussed his diagnosis with Defendant Barnes and Plaintiff was returned to the floor of the Hospital. In the early morning hours of June 4, 2005, Plaintiff experienced the urge to urinate and defecate, and repeatedly requested assistance from Hospital employees to do so. When said Hospital employees failed to heed Plaintiff's call, Plaintiff attempted to get out of bed on his own accord. Due to numbness and weakness in his lower extremities, Plaintiff fell to the floor. Throughout Plaintiff's stay at the Hospital, his care was the responsibility of Defendant Barnes, and despite continuing back pain, weakness and a loss of feeling in both lower extremities, and radiating pain in both lower extremities, and bowel and bladder difficulties, Defendant Barnes continued to conservatively treat Plaintiff and failed to initiate transfer to a medical facility which could properly diagnose and treat his condition, and failed to obtain consultations from experts who could properly diagnose and treat his condition. Defendant Bechtel performed an MRI of the Plaintiff's thoracic spine on June 4, 2005, but failed to note the large epidural mass posterior to T11-12 that was compressing Plaintiff's spinal cord. Finally, in the early evening of June 4, 2005, at the request of Kuhl and other family members, Plaintiff was transferred by air ambulance to Mercy Medical Center in Sioux City, Iowa, and diagnosed with disc herniation with spinal cord compression. At that time, motor examination showed "complete paraplegia with 0/5 lower extremity function except in the left lower extremity distally he has 1-2/5 flexion and extension movement of the toes of his left foot." Plaintiff was then transported to Nebraska Medical Center in Omaha, Nebraska, for neurosurgical consultation and intervention.

14.     Defendants failed to exercise reasonable and ordinary care, skill and diligence, and departed from the generally-accepted and recognized standard of care for the community in

5

the care, assistance, and treatment of Plaintiff and were therefore negligent in performing their duties in one or more of the following particulars:

As to Defendants Fitzgerald and Dakota Chiropractic:

    a. Using improper chiropractic technique and/or manipulation;
    b. Using traction inappropriately given Plaintiff's condition;
    c. Failure to properly diagnose Plaintiff's back condition;
    d. Failure to properly treat Plaintiff's back condition; and
    e. Failure to timely refer Plaintiff for appropriate medical treatment.

As to Defendants Barnes, Schurrer, Javurek, Yankton Clinic, Hospital, Doe(s) P.C., John Doe(s) M.D., and Jane Doe(s), M.D.:

    a. Failure to properly diagnose Plaintiff's back condition;
    b. Failure to properly treat Plaintiff's back condition;
    c. Failure to consult with appropriate medical specialists to determine the cause of and the proper course of treatment for Plaintiff's back condition;
    d. Failure to timely transfer Plaintiff to a medical facility with the expertise, equipment, and staff to appropriately diagnose and treat Plaintiff's condition.

As to Defendants Bechtel and Yankton Radiology:

    a. Failure to properly perform diagnostic tests of Plaintiff's back;
    b. Failure to properly interpret diagnostic tests of Plaintiff's back;
    c. Failure to timely identify the spinal cord compression in Plaintiff's back; and
    d. Failure to seek further information as to Plaintiff's condition.

As to Defendant Hospital, by and through its employees and/or agents:

    a. Failure to properly observe, assess, and/or monitor Plaintiff's condition throughout his stay at the hospital;
    b. Failure to document and/or communicate a significant change in Plaintiff's condition;
    c. Failure to formulate and/or follow an applicable nursing care plan;
    d. Failure to provide a safe environment to protect the Plaintiff;
    e. Failure to follow hospital policy and/or procedures;
    f. Failure to perform a proper nursing assessment;
    g. Failure to observe the actions of Plaintiff's medications and take the necessary precautions; and
    h. Failure to observe a change in Plaintiff's fall risk assessment.

15. The negligence of Defendant Barnes is attributable to Defendants Yankton Clinic and Hospital by virtue of the doctrine of respondeat superior and/or apparent agency.

16. The negligence of Defendants Schurrer and Javurek is attributable to Defendant Hospital and John Doe, P.C., by virtue of the doctrine of respondeat superior and/or apparent agency.

17. The negligence of Defendant Bechtel is attributable to Defendants Yankton Radiology and the Hospital by virtue of the doctrine of respondeat superior and/or apparent agency.

18. The negligence of Defendants John Doe(s), M.D., and Jane Doe(s) M.D., is attributable to Defendant John Doe(s) P.C., by virtue of the doctrine of respondeat superior and/or apparent agency.

19. The negligence of Defendants Barnes, Schurrer, Javurek, Yankton Clinic, Bechtel, Yankton Radiology, Hospital, John Doe(s), P.C., John Doe(s), M.D., Jane Doe(s), M.D., is attributable to the other defendants vicariously by virtue of the joint venture undertaken by them in the care and treatment of the Plaintiff.

20. The negligence of Defendant Fitzgerald is attributable to Defendant Dakota Chiropractic by virtue of the doctrine of respondeat superior and/or apparent agency.

21. As a direct and proximate result of the joint and several negligence of Defendants and/or each of them as set forth above, Plaintiff sustained permanent spinal injury, painful physical discomfort, mental agony, mental and emotional pain and distress, embarrassment and humiliation, and physical disability; and/or the joint and several negligence of the Defendants and/or each of them as set forth above, constituted a substantial factor in causing Plaintiff to sustain permanent injury to his spinal cord, painful physical discomfort, mental agony, mental and emotional pain and distress, embarrassment and humiliation, and physical disability.

22. As a direct and proximate result of the joint and several negligence of Defendants and/or each of them as set forth above, Plaintiff has incurred medical and hospital expenses in the approximate amount of $140,000.00, and will incur future, hospital and medical expenses and/or the joint and several negligence of the Defendants and/or each of them as set forth above, constituted a substantial factor in causing the Plaintiff to incur medical and hospital expenses in the approximate amount of $140,000.00 and to incur future medical expenses.

23. Plaintiff, at the time of his injury, was the owner of Bartak Glass and earned approximately $25,000 per year. As a direct and proximate result of the joint and several negligence of Defendants, and/or each of them, as set forth above, Plaintiff has suffered a loss of

7

past wages and his future earning capacity has been permanently impaired; and/or the joint and several negligence of the Defendants, and/or each of them, as set forth above, constitute a substantial factor in causing Plaintiff to suffer lost wages and future earning capacity has been permanently impaired.

## SECOND CAUSE OF ACTION

24. Plaintiffs and reallege paragraphs 1 - 23 of their first cause of action and incorporate them herein by reference into this second cause of action as if fully set forth.

25. As a direct and proximate result of the joint and several negligence of the Defendants and/or each of them as set forth above, and/or the joint and several negligence of the Defendants and each of them as set forth above, constituted a substantial factor in causing Kuhl, by reason of Plaintiff's spinal cord compression and the resulting injuries to Plaintiff, to lose the benefit of Plaintiff's care, love, companionship, services, affection and advice, and she will continue to suffer such losses in the future. By reason of the foregoing, Kuhl has suffered damages.

WHEREFORE, Plaintiffs request judgment against the Defendants as follows:

1. Damages in an undetermined amount in excess of $75,000.00, exclusive of interests and costs;
2. Plaintiffs' costs in this action;
3. Attorneys' fees; and
4. Such other and further relief as the Court may deem just and proper.

Dated this ___ day of May, 2007.

**BARKER LAW FIRM, LLC**

By: _____
Kenneth E. Barker
211 Zinnia St.
PO Box 100
Belle Fourche, SD 57717
Tel. (605) 723-8000
Fax (605) 723-8010

Jeffrey P. Welch
JOHNSON, WELCH & AUSMAN, P.C.
3628 N 163rd Plaza
Omaha, NE 68116
Telephone: (402) 934-7878
Fax: (402)934-4737
E-mail: law@johnsonwelch.com

Attorneys for Plaintiffs THOMAS L. BARTAK, and CINDY S. KUHL

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated this 4th day of May, 2007.

By _____
Kenneth E. Barker